# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILSON, Minors.

UNPUBLISHED
April 21, 2016

No. 329099
Washtenaw Circuit Court
Family Division
LC Nos. 13-000145-NA;
           13-000146-NA

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) and (g). Because the trial court properly found statutory grounds for termination and that termination was in the best interests of the children, we affirm.

Respondent argues that the trial court erred in terminating her parental rights because there was not clear and convincing evidence of at least one statutory ground for termination.[1] We disagree. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) after finding that respondent physically abused the children throughout the proceedings and that further services would not cure the problem. Termination of parental rights is proper under MCL 712A.19b(3)(g) where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

---

[1] We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

The record reflects that in June 2013, when AW was about a month old, she was hospitalized for approximately a week because she was not gaining weight due to respondent's failure to properly feed her. Then in July and August 2013, respondent was observed mistreating both children and, in particular, grabbing AW by one arm. In August 2013, AW was again hospitalized, this time because she was unable to move her right arm because her elbow was dislocated. Respondent's explanations for AW's arm injury were inconsistent with the actual injury. The record also reflects that respondent was frequently hostile and aggressive to JW. In February 2014, Child Protective Services (CPS) was called because respondent was shaking JW. Respondent continued to pull the children by their arms despite repeated instructions not to do so, and she was twice charged with child abuse relating to her treatment of the children. Respondent, however, believed that people were overreacting to her treatment of the children.

The trial court properly found that there was no reasonable expectation that the respondent's ability to provide care would change. A court ordered psychological evaluation performed by Dr. Joshua Ehrlich found that she had a verbal IQ of 57, which was in the bottom 0.2% of the population. He opined that her cognitive deficiencies rendered her unable to safely parent the minor children, and that services could not rectify the issue. Respondent did receive parenting assistance from a service provider, Linda Jones, in late 2014 and early 2015 and she showed improvement in her parenting skills while under direct guidance. Respondent, however, was unable to maintain her parenting skills at a satisfactory level when Jones was not present. Moreover, the record reflects that respondent regularly failed to comply with the parent-agency agreement. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003) (holding that the failure to comply with services "is evidence of a parent's failure to provide proper care and custody"). For instance, respondent's anger management therapy sessions were cancelled because of her failure to attend the sessions, and she did not schedule appointments with her foster care worker in May or June 2015. Respondent's non-compliance with the parent-agency agreement extended to July 1, 2015, the date of the termination hearing. The evidence clearly demonstrated that the respondent did not show lasting benefit from the services with which she did comply. Because of respondent's persistent failure to comply with services and her nearly complete failure to benefit from them, the trial court did not clearly err in finding that there was no reasonable likelihood that respondent would provide proper care and custody within a reasonable time, especially considering that the minor children's young ages rendered them vulnerable to physical abuse. Although, as respondent argues, Jones testified that respondent was capable of learning, Jones also testified that respondent needed ongoing support and constant in-home supervision to parent the minor children.

Respondent's lack of suitable housing and employment further supported the trial court's termination under MCL 712A.19b(3)(g). See *In re Trejo*, 462 Mich 341, 362-363; 612 NW2d 407 (2000). Respondent changed residences numerous times throughout the proceedings, often staying with family members or friends. None of the places in which she lived—insofar as respondent even made the Department of Health and Human Services (DHHS) aware of her address—were suitable for the minor children. Respondent never held a job in her life and she told CPS that she had no desire to find employment. Although, as respondent argues, she received Social Security Insurance benefits of $710 each month, this was clearly insufficient to provide proper care and custody to the minor children. Further, there was no reasonable likelihood that respondent would find housing or employment within a reasonable time because respondent never participated in services to address those issues. Respondent herself testified at

the July 1, 2015 termination hearing that she would not have suitable housing for at least one more year.

Finally, the record shows that respondent's failure to properly feed the minor children supports termination under MCL 712A.19b(3)(g). AW was hospitalized because of respondent's improper feeding. After AW was released, the DHHS noted that she was again failing to gain weight because of respondent's inability to mix her food correctly. Respondent brought candy, fast food, and soda to parenting time visits. Because of respondent's cognitive impairment and demonstrated inability to retain instruction on parenting, there was no reasonable likelihood that she would be able to properly feed the minor children within a reasonable time. Accordingly, on this record, the trial court did not clearly err in finding termination proper under MCL 712A.19b(3)(g); *In re VanDalen*, 293 Mich App at 139.[2]

Respondent next argues that the trial court erred in finding by a preponderance of the evidence that termination was in the children's best interests. We disagree. We review for clear error a trial court's decision regarding the best interests of a child. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The trial court should consider all record evidence to determine the child's best interests, *In re Trejo*, 462 Mich at 356, and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court can consider include how long the child lived in foster care or with relatives and the likelihood that "the child could be returned to [the] parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The record reflects that JW was placed with a relative and told the guardian ad litem (GAL) that she wanted to return to respondent. The trial court found that those facts, and the fact that JW had a bond with respondent, weighed against termination.[3] Further, the trial court found that AW's placement in foster care was not advantageous. Despite those finding, the court

---

[2] Because only one ground for termination need be established, *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009), we need not address whether termination was proper pursuant to MCL 712A.19b(3)(c)(*i*).

[3] Respondent argues that termination was not in JW's best interests because she was placed with a relative. Indeed, "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)[.]" *In re Olive/Metts*, 297 Mich App at 43, quoting *In re Mason* 486 Mich 142, 164; 782 NW2d 747 (2010). Nevertheless, as long as the trial court considers relative placement, "the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *Id.* Here, it is clear that the trial court did consider the fact that JW was placed with a relative.

concluded that termination of respondent's parental rights was in the best interests of both children because they needed permanency and because respondent's lack of parenting skills placed them at risk of harm. The children lived outside of respondent's custody for nearly two years before termination, and JW's behavior became worse after her visits with respondent. Further, due to respondent's cognitive limits, it was unlikely that the children could ever be returned to her care. Finally, the children's paternal grandfather and his wife showed willingness to accept the children into their home. These facts support the trial court's finding that termination was in the minor children's best interests.

Respondent also argues that the trial court erred in failing to expressly address the best interests of JW and AW individually. "[T]he trial court 'has a duty to decide the best interests of each child individually.' " *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014), quoting *In re Olive/Metts*, 297 Mich App at 42. Despite that, it is only when the children's best interests "*significantly* differ" that the trial court "should address those differences when making its determination of the children's best interests." *Id*. at 715-716 (emphasis in original). The trial court is not required to make "redundant factual findings concerning each child's best interests." *Id*. at 716. Here, the record shows that the court noted its obligation to make individual findings for each child. The court then made individual findings regarding JW's relative placement and desire for reunification and regarding AW's placement in foster care. That the court's remaining findings did not individually address AW or JW is not in error given that the findings would have been redundant. See *id*.

Finally, respondent argues that the DHHS failed to make reasonable efforts at reunification because the department did not provide her with adequate services to address her cognitive and mental health issues, she was not afforded time with Jones before visits, and her visits were not recorded on video.[4] We disagree.

The evidence shows that substantial efforts were made to accommodate respondent's cognitive disability. For example, at the January 15, 2015 review hearing respondent indicated that she needed to work with Jones more frequently and thereafter, Jones participated in six

---

[4] Because respondent did not object to services when the parent-agency agreement was made, we review her unpreserved arguments for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). Thereafter, a trial court "is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *In re Rood*, 483 Mich 73, 105; 763 NW2d 587 (2009) (quotation omitted). If the DHHS "fails to take into account the parents' limitations or disabilities and make any reasonable accommodations, then it cannot be found that reasonable efforts were made to reunite the family." *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich at 89.

parenting visits with respondent. As noted above, the record reflects that respondent's parenting skills improved when she was under Jones's guidance, but consistently regressed when Jones was not present. The department also referred respondent to Access for services regarding her mental health, but she did not qualify. Dr. Ehrlich testified that in comparison with other cases he had seen, respondent had received many services. Essentially, there were no services available, besides those offered to respondent that would have addressed her cognitive deficiencies. The testimony at the termination hearings indicated that respondent needed full-time, in-home assistance to safely parent the minor children, but the DHHS is not required to provide respondent "with full-time, live-in assistance with her children." *In re Terry*, 240 Mich App at 27-28.

Respondent's argument that reasonable efforts were not made because her visits were not recorded on video and because respondent should have been provided time with Jones before visits lacks merit. Although Jones testified that recording visits would have helped respondent learn parenting skills, Jones also testified that she did not record visits because it would have taken respondent's attention away from the minor children. Further, although it appears that respondent did not meet with Jones before visits, this does not evidence a plain error with respect to the provided services. To the contrary, respondent was provided with numerous services to address her mental health and parenting skills, but throughout the proceedings she consistently failed to fully comply with them. "While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Therefore, on this record, there exists no plain error affecting respondent's substantial rights as related to the reasonable services provided.

Affirmed.

/s/ Michael J. Talbot
/s/ Joel P. Hoekstra
/s/ Douglas B. Shapiro

-5-